# United States District Court
## for the Northern District of Oklahoma

Case No. 04-cr-119-JDR-1

United States of America,

*Plaintiff*,

*versus*

Leslie Allen Barkley (USM No. 09530-062),

*Defendant.*

## OPINION AND ORDER

Before the Court is Defendant Leslie Allen Barkley's pro se Motion for Reduction in Sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Dkt. 44]. The Government opposes the motion [Dkt. 51], and Barkley has replied [Dkt. 53].[1] Barkley asks this Court to reduce his total sentence of 519 months' imprisonment to 309 months' imprisonment, asserting that amendments to 18 U.S.C. § 924(c)'s penalty provisions made by the First Step Act of 2018 created a significant disparity between the mandatory minimum sentence he received for his second § 924(c) conviction and the mandatory minimum sentence he would face if sentenced today for that same conviction; that he has served more than twenty years of the total sentence imposed; that a reduction of his unusually long sentence would be consistent with the United States Sentencing Commission's policy statement in USSG § 1B1.13(b)(6); that he has made good progress with rehabilitation; and that consideration of

---

[1] Because Barkley filed the motion and reply without counsel, the Court liberally construes his filings. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). Barkley supplemented his motion on October 11, 2024, by submitting a duplicate copy of the attachments submitted with the motion. *See* Dkts. 44-1, 54.

Case No. 04-cr-119

applicable sentencing factors in 18 U.S.C. § 3553(a) support his request for a reduced sentence. Dkts. 44, 53. The Government urges the Court to deny the motion, asserting that Barkley does not present extraordinary and compelling reasons warranting a reduction in sentence; that the policy statement in USSG § 1B1.13(b)(6) is invalid; and that consideration of Barkley's individualized circumstances, including his history of committing violent crimes, his history of serious disciplinary violations, and his likelihood of recidivism weigh strongly against his request for a reduced sentence. Dkt. 51.

I.

Barkley's first contact with the criminal justice system occurred before he was eight years old, around the same time he began using alcohol and marijuana. PSR at ¶¶ 53, 58. Between the ages of ten and twelve, he was a regular intravenous heroin user. *Id.* ¶ 58. He continued using heroin after he joined the Army at age nineteen, and he was discharged from the Army after he traded a pistol to a non-NATO soldier in exchange for heroin. *Id.* ¶¶ 53, 58. Barkley now is sixty-four years old, and he has spent more than half of his adult life in prison. Dkt. 44 at 7; Dkt. 53 at 3; PSR at ¶¶ 44-47.

In October and November 1982, Barkley committed several violent offenses in Texas and Arizona. *Id.* at ¶¶ 44–46. In Texas state court, he pleaded guilty to four counts of aggravated robbery—one based on an armed robbery of convenience store in Neuces County, and three based on armed robberies in Harris County—and he received prison sentences of nineteen and twenty-one years. *Id.* at ¶¶ 44-45. During the Neuces County robbery, Barkley twice hit the convenience store clerk in the head with a pistol and fled the store with $300 and a case of beer. *Id.* at ¶ 44. During one Harris County robbery, Barkley threatened a female cab driver with a pistol, fondled her, and robbed her of $75. *Id.* at ¶ 45. During another Harris County robbery, Barkley threatened employees of a Pizza Hut restaurant with a handgun, hit one employee in the head with a pistol, forced the employees into a cooler, raped and sodomized a female employee in the bathroom, and left the restaurant with $700. *Id.* In

Case No. 04-cr-119

Arizona state court, a jury convicted Barkley of armed robbery, first degree burglary, and aggravated assault, and he received a total prison sentence of twenty-eight years. *Id.* at ¶ 46. The Arizona convictions were based on Barkley's armed robbery of an auto parts store. *Id.* During that robbery, Barkley forced the store clerk into the back room, hit the clerk on the head, and left the store with $800. *Id.* In 1990, after serving seven years' imprisonment in Texas, Barkley was released on parole and began serving his Arizona prison sentence. *Id.* In June 2003, after serving thirteen years' imprisonment in Arizona, he was released on parole. *Id.*

Roughly one year later, while he was on parole from the Arizona sentence, Barkley committed a string of violent armed robberies in Oklahoma. PSR at ¶¶ 11-19, 38-42, 49; Dkt. 38 at 2-3. On June 21, 2004, a law enforcement officer shot Barkley after Barkley robbed an Owasso convenience store at gunpoint, fled from law enforcement officers, and attempted to take a pickup truck from a young woman by holding a gun to her head and threatening to kill her. PSR at ¶ 1, 11-16.[2] In October 2004, a federal grand jury returned a five-count superseding indictment charging Barkley with Hobbs Act Robbery in violation of 18 U.S.C. § 1951 (count one); attempted carjacking in violation of 18 U.S.C. § 2119 (count three); two counts of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (counts two and four); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) and (e) (count five). Dkt. 23. In exchange for the Government's offer to seek dismissal of two charges (counts one and five), Barkley pleaded guilty to the attempted carjacking and both § 924(c) charges (counts two, three, and four). Dkts. 32, 33.

Applying the 2004 Sentencing Guidelines, the United States Probation Office determined that Barkley's total offense level as to count three was

---

[2] Before he was shot and arrested on June 21, 2004, Barkley committed, or attempted to commit, armed robberies of at least five other businesses in Owasso and Pryor between June 5, 2004, and June 19, 2004. PSR at ¶¶ 38-42.

Case No. 04-cr-119

26, and his criminal history category was VI, resulting in an advisory guide-lines range of 120 to 150 months' imprisonment for the carjacking conviction. PSR at ¶¶ 25-37, 51, 62-63. The Probation Office further determined that Bar-kley faced mandatory minimum sentences of eighty-four months' imprison-ment for the first § 924(c) conviction (count two) and 300 months' imprison-ment for the second § 924(c) conviction; and that both terms should run con-secutively to one another and the other counts, for a total advisory guidelines range of 504 to 534 months of imprisonment. *Id.* at ¶¶ 25, 37, 62-63. The Honorable Judge Sven Erik Holmes sentenced Barkley to a total of 519 months' imprisonment: 135 months (count three); eighty-four months (count two) to be served consecutively to the sentence for count three; and 300 months (count four) to be served consecutively to all sentences. Dkt. 40.[3] Judge Holmes also imposed a total term of five years' supervised release: one three-year term (count three) and two five-year terms (counts two and four) with all terms to be served concurrently. *Id.* Barkley did not appeal his con-victions or sentences or seek collateral relief under 28 U.S.C. § 2255.

On June 18, 2024, Barkley submitted a letter to the warden, asking the Bureau of Prisons to file a motion for reduction in sentence on his behalf. Dkt. 44 at 3; Dkt. 44-1 at 1. The warden did not respond to the letter. Dkt. 44 at 3. Barkley filed this motion on August 6, 2024.

Barkley presently is imprisoned at FCI Marianna with a projected re-lease date of December 14, 2042. *See* Federal Bureau of Prisons Inmate Loca-tor, https://www.bop.gov/inmateloc, last visited Dec. 19, 2024 (query BOP # 09530-062).

---

[3] On October 13, 2004, while awaiting sentencing in this case, Barkley assaulted a staff member at the David L. Moss Criminal Justice Center in Tulsa, Oklahoma. PSR at ¶ 47. Barkley pleaded guilty in state court to one count of assault and battery with a dangerous weapon and received a three-year prison sentence. *Id.* The state district court ordered Bar-kley's sentence to be served consecutively to his federal sentences. *Id.*

Case No. 04-cr-119

## II.

Federal district courts ordinarily lack authority to modify a previously imposed sentence. 18 U.S.C. § 3582(c). But § 3582(c)(1)(A)(i) permits district courts, "in any case," to reduce a term of imprisonment "after considering the factors set forth in § 3553(a) to the extent they are applicable, if [the court] finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Maumau*, 993 F.3d 821, 831 & n.4 (10th Cir. 2021).[4]

*Maumau* instructs courts to apply a three-step test when considering a motion for reduction in sentence. At step one, the court exercises its discretion to determine for itself whether the defendant has shown any extraordinary and compelling reasons for a reduction in sentence. *Maumau*, 993 F.3d at 831, 834. At step two, the court considers whether a reduction would be consistent with the Sentencing Commission's applicable policy statements. *Id.* at 831. At step three, the court considers applicable § 3553(a) sentencing factors to determine whether a reduction authorized by steps one and two is warranted under the defendant's individualized circumstances. *Id.* The burden to establish that a reduction in sentence is warranted rests with the defendant. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). A court may deny a motion for reduction in sentence, without addressing all three steps, if the defendant fails to meet that burden at any step. *United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024). But before granting a motion, the court must address all three steps. *Id.*

The Sentencing Commission's applicable policy statement advises courts to find that "extraordinary and compelling reasons" warrant a reduction in sentence and that the defendant does not pose a danger to the public.

---

[4] As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) allows a defendant to file a motion for reduction in sentence on his or her own behalf. 18 U.S.C. § 3582(c)(1)(A). Before the FSA, only the BOP could file a motion for reduction in sentence on behalf of a defendant. *Maumau*, 993 F.3d at 824.

Case No. 04-cr-119

USSG § 1B1.13(a)–(b). The policy statement describes six circumstances that may provide "extraordinary and compelling reasons" for a reduction in sentence, including one "catch-all" provision for circumstances "similar in gravity" to those described in the first four provisions. USSG § 1B1.13(b)(1)-(6). Relevant here, the sixth circumstance is described as follows:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSG § 1B1.13(b)(6). The Sentencing Commission's policy statement further provides that a defendant's rehabilitation is not, in and of itself, an extraordinary and compelling reason but that courts may consider rehabilitation "in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. USSG § 1B1.13(d); *see* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," but providing that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason").

### III.

### A.

A defendant must exhaust administrative remedies before filing a motion for reduction in sentence in district court. 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement is a claim-processing rule, not a jurisdictional rule. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030-31 (10th Cir. 2021). The Government does not challenge the motion on exhaustion grounds and thus

has waived the issue. Dkt. 51; *see Hemmelgarn*, 15 F.4th at 1031 (concluding that the government waived the exhaustion argument by failing to argue exhaustion on appeal). Regardless, the Court finds that Barkley exhausted administrative remedies by asking the warden to file a motion for reduction in sentence on his behalf. Dkt. 44-1. The Court therefore will proceed to the merits of Barkley's motion, applying *Maumau*'s three-step test.

<h3 style="text-align:center">B.</h3>

Barkley contends that a combination of circumstances justifies a reduction in sentence—namely, the unusual length of his total sentence (519 months' imprisonment); the extreme disparity between the mandatory minimum sentence he received for his second § 924(c) conviction (300 months) and the mandatory minimum sentence he would face for the second § 924(c) conviction under current law (eighty-four months); his "advanced age of 64," the BOP's determination that he has a low risk of recidivism; and his rehabilitative efforts, including his completion of several self-improvement courses and a nonresidential drug program and his steady employment. Dkt. 44 at 5-8; Dkt. 53 at 3-4. The Court agrees.

When Barkley was sentenced, the law required Judge Holmes to impose a mandatory minimum prison sentence of 300 months, or twenty-five years, for Barkley's second § 924(c) conviction—even though the offense conduct resulting in both § 924(c) convictions involved Barkley's brandishing of a gun during the commission of an armed robbery and an attempted carjacking that occurred close in time on the same day and both convictions resulted from a single prosecution. 18 U.S.C. § 924(c)(1)(C) (2005); *Deal v. United States*, 508 U.S. 129, 132 (1993). But "[s]ection 403(a) of the First Step Act amended § 924(c) so that the twenty-five-year mandatory minimum sentence for a second or subsequent § 924(c) conviction of § 924(c) applies only if the defendant's first § 924(c) conviction is final at the time of the second or subsequent § 924(c) conviction." *Maumau*, 993 F.3d at 824. And while Congress chose not to make § 403(a) retroactive for all defendants, district courts

Case No. 04-cr-119

in this circuit may consider the length of a defendant's sentence and the FSA's elimination of sentence-stacking under § 924(c), along with the defendant's individualized circumstances, to determine whether extraordinary and compelling reasons support a reduction in sentence. *See Maumau*, 993 F.3d at 837 (affirming district court's "conclusion that a combination of factors" including "the incredible length of [the defendant's] stacked mandatory sentences under § 924(c); the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that [the defendant], if sentenced today . . . would not be subject to such a long term of imprisonment" could be considered in determining the existence of extraordinary and compelling reasons for a reduction in sentence (alterations added; internal quotation marks omitted)); *United States v. Brooks*, 717 F. Supp. 3d 1087, 1092, 1099 (N.D. Okla. 2024) (finding the existence of extraordinary and compelling reasons to reduce a defendant's sentence based on the defendant's relative youth at the time of the offenses, the unusual length of his total sentence that resulted from the stacking of multiple § 924(c) sentences, and the extreme disparity between the sentence the defendant received and the one he would have faced if sentenced when he filed his motion for reduction in sentence); *see also United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020) ("The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)."); *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) (applying *McCoy*'s reasoning to conclude that district court could consider whether "a defendant's unique circumstances . . . in combination with the mandatory sentence [the defendant] received under § 841(b)(1)(A), constitute 'extraordinary and compelling reasons' for a sentence reduction under § 3582(c)(1)(A)" even though Congress chose not to make the FSA's "reduction of the mandatory minimum sentence under § 841(b)(1)(A) from life to 25 years" retroactive to all defendants previously sentenced under that penalty provision).

Case No. 04-cr-119

As Barkley contends, he received an extraordinarily long sentence of 300 months' imprisonment for his second § 924(c) conviction based on the stacking of his two § 924(c) sentences arising from a single prosecution; the mandatory minimum sentence he would face if sentenced today for the second § 924(c) conviction (eighty-four months) is roughly eighteen years shorter than the sentence he received (300 months); and he has served more than twenty years of his total sentence. The Government does not contest these facts. *See* Dkt. 51 at 9 (conceding that Barkley "is correct that, if sentenced today for the three crimes to which he pleaded guilty, he would be eligible for a shorter sentence. Because the First Step Act removed § 924(c)'s enhancement provisions, today Mr. Barkley would face an 84-month consecutive sentence, instead of a 300-month consecutive sentence, for his second § 924(c) conviction, for total sentencing range of 288 to 318 months."). Instead, as the Court understands it, the Government argues that Barkley cannot rely on these facts to demonstrate an extraordinary and compelling reason for a reduction in sentence because, if the Government could have predicted the 2018 FSA's elimination of § 924(c) sentence-stacking when the Government crafted the terms of Barkley's plea agreement in 2004, the Government could have pursued and obtained additional convictions for uncharged conduct or charges it agreed to dismiss, resulting in a harsher sentence for Barkley than the one actually imposed, thus eliminating any gross disparity between the sentence he received and the one he might face today. Dkt. 51 at 9-11. This argument is creative, but the Court declines the Government's invitation to speculate about different decisions prosecutors might have made in 2004 had they been able to predict that Congress would eliminate the harsh effect of § 924(c) sentence-stacking in 2018.

The concurring opinion in *Maumau*, however, cautions that *Maumau*'s "holding does not give district courts carte blanche to retroactively apply in every instance the amendments to the stacking provision in 18 U.S.C. § 924(c)." 993 F.3d at 838 (Tymkovich, C.J., concurring). Thus, "[a] long sentence derived from stacking cannot, by itself, be an 'extraordinary

Case No. 04-cr-119

and compelling' reason for sentence reduction." *Id.*; *see also McGee*, 992 F.3d at 1048 ("[O]nly . . . the combination of such a sentence and a defendant's unique circumstances . . . constitute 'extraordinary and compelling reasons' for purposes of § 3582(c)(1)(A)(i).").

Considering Barkley's individualized circumstances, the Court finds, at step one, that Barkley's current age of sixty-four, the BOP's determination that he has a low risk of recidivism, his completion of several BOP courses and programs, including a nonresidential drug program, and recent improvements in his prison disciplinary record, combined with his unusually long sentence that is based on the stacking of § 924(c) penalties for multiple violations in a single prosecution and the significantly lower mandatory minimum sentence he would face under current law, support his request for a reduction in sentence.

## C.

Barkley contends that reducing his sentence is consistent with the Sentencing Commission's policy statement in USSG § 1B1.13(b)(6). Dkt. 44 at 3; Dkt. 53 at 1-3. Again, the Court agrees. As previously stated, that policy statement provides in full:

> UNUSUALLY LONG SENTENCE. — If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSG § 1B1.13(b)(6). Barkley argues his circumstances meet the criteria described in subsection (b)(6) because his 519-month prison sentence is unusually long, he has served more than twenty years of his total sentence, and the FSA's amendment to § 924(c) penalty provisions produced an "extreme"

Case No. 04-cr-119

disparity between the sentence he is serving for his second § 924(c) convic-
tion (300 months) and the sentence likely to be imposed under current law
(eighty-four months). Dkt. 44 at 1, 5-6; Dkt 53 at 1-3.

The Government does not seriously dispute the existence of these cir-
cumstances. In fact, the Government concedes that, "if sentenced today for
the three crimes to which he pleaded guilty, [Barkley] would be eligible for a
shorter sentence," specifically, a sentence of eighty-four months for the sec-
ond § 924(c) conviction. Dkt. 51 at 9. Despite this concession, the Govern-
ment argues that Barkley cannot rely on these circumstances to support a re-
duction in sentence "because [USSG] § 1B1.13(b)(6) conflicts with §
3582(c)(1)(A)'s plain text, context, and purpose" and is therefore "invalid."
*Id.* at 6-9. This court previously considered and rejected the Government's
challenge to the validity of USSG § 1B1.13(b)(6). *See Brooks*, 717 F. Supp. 3d
at 1093-97. In *Brooks*, this court found that the Sentencing Commission's
adoption of subsection (b)(6) was a proper exercise of authority that Congress
delegated to the Commission in 28 U.S.C. § 994(t); found that subsection
(b)(6)'s description of extraordinary and compelling reasons is consistent
with Tenth Circuit precedent; and rejected the Government's challenge to
the validity of subsection (b)(6) based on Tenth Circuit precedent and the
persuasiveness of the Commission's official commentary to Amendment 814.
*Id.*; *see also United States v. Miller*, Case No. 12-CR-00050-GKF-7, 2024 WL
3043528, at *5 n.4 (N.D. Okla. June 18, 2024) (unpublished) (finding *Brooks*'s
reasoning persuasive and rejecting Government's assertion that subsection
(b)(6) is invalid).

This Court recognizes that some courts have agreed with the Govern-
ment's position that subsection (b)(6) is invalid. *See, e.g.*, *United States v.
Rutherford*, 120 F.4th 360, 374-380 (3d Cir. 2024) (reaffirming prior holding
"that the nonretroactive change to § 924(c), whether by itself or in combina-
tion with other factors, cannot be considered in the compassionate release
eligibility context" and concluding that USSG § 1B1.13(b)(6) conflicts with

Case No. 04-cr-119

Third Circuit precedent and conflicts with Congress's explicit decision to make the FSA's change to § 924(c) nonretroactive); *United States v. Taylor*, ___ F. Supp. 3d ____, 2024 WL 3520358, *5-6 (S.D. Ind. July 23, 2024) (holding, in light of Seventh Circuit precedent, that USSG § 1B1.13(b)(6) "is contrary to statute and the Sentencing Commission's view to the contrary is not entitled to deference"); *United States v. Carter*, 711 F. Supp. 3d 428, 435-39 (E.D. Pa. Jan. 12, 2024) (concluding that "binding" Third Circuit precedent interpreting 18 U.S.C. § 3582(c)(1)(A)(i) "forecloses relief via Section 1B1.13(b)(6) of the Sentencing Commission's revised policy statement"). But the Government does not discuss any recent decisions that have held USSG § 1B1.13(b)(6) invalid, and it acknowledges that the Tenth Circuit "has yet to consider the amended policy statement." Dkt. 51, at 6-9. Because the reasoning in existing Tenth Circuit precedent (*e.g.*, *Maumau* and *McGee*) aligns with the policy statement in USSG § 1B1.13(b)(6), this Court remains unpersuaded by the Government's argument that USSG § 1B1.13(b)(6) is invalid.[5]

With that issue resolved, the Court agrees with Barkley that his circumstances fit within subsection (b)(6): he received an unusually long sentence based on the stacking of § 924(c) sentences for two convictions obtained during a single prosecution, he has served more than twenty years of that sentence, and the FSA's amendments to § 924(c)'s penalty provisions produced a gross disparity between the length of his mandatory minimum 300-month sentence for his second § 924(c) conviction and the mandatory minimum eighty-four month sentence he would face today for the same conviction. Further, as previously discussed and further discussed below, Barkley's individualized circumstances (his advanced age and his rehabilitation efforts)

---

[5] Even assuming the Government could persuade this Court that USSG § 1B1.13(b)(6) is invalid, it is unclear how that would advance the Government's argument that Barkley cannot rely on the circumstances described in subsection (b)(6) to support his request for a reduction in sentence when Tenth Circuit precedent permits consideration of those same circumstances in determining whether extraordinary and compelling reasons exist to reduce a defendant's sentence.

Case No. 04-cr-119

support a reduction in sentence. The Court therefore finds, at step two, that a sentence reduction is consistent with USSG § 1B1.13(b)(6).

## D.

Lastly, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), if applicable, before it may grant Barkley's request for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *Maumau*, 993 F.3d at 831. Those factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . [and] to protect the public from further crimes of the defendant"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). "[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors." *Pepper v. United States*, 562 U.S. 476, 491 (2011). "Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.* A defendant's "postsentencing conduct also sheds light on the likelihood that he will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence." *Id.* at 492.

The nature, circumstances, and seriousness of Barkley's offenses do not favor a reduction in sentence. Barkley's offense conduct in 2004 demonstrated his utter disregard for the lives of others. And as the Government emphasizes, his conduct is more egregious given that he committed the Oklahoma crime spree within a year of being released on parole after serving roughly twenty years in state prison for strikingly similar crimes he committed in 1982. Dkt. 51 at 11-13. In addition, as previously noted, Barkley's

Case No. 04-cr-119

presentencing conduct in this case resulted in a state conviction and sentence for assaulting a detention officer. *Id.* at 12.

Barkley's early postsentencing conduct also weighs against a reduction in sentence. As described by the Government, Barkley

> accru[ed] disciplinary proceedings, many drug related, at the rate of at least one a year, from 2005 through 2017. In 2008, alone, he was caught with a homemade syringe once, and tested positive for opiates six times. In 2009, Mr. Barkley was only disciplined for use of narcotics twice, but admitted possessing a weapon twice. In 2010, he was again disciplined for drugs, but also added fighting to his disciplinary repertoire. The consequences for those infractions had no apparent effect; he repeated both in 2011, and again in 2012. Nor has age mellowed Mr. Barkley; he accrued his most recent disciplinary infraction, for disruptive conduct, in 2023.

Dkt. 51 at 13-14. Barkley acknowledges that his postsentencing conduct between 2005 and 2012 does not show any focus on rehabilitation or any attempt to address his lengthy history of substance abuse. Dkt. 53 at 3-4.

Barkley, however, urges this Court to look at his more recent rehabilitation efforts. Dkt. 44 at 7-8; Dkt. 53 at 3-4. Barkley represents that he stopped using drugs in 2012 and decided to change his life in 2013. Dkt. 53 at 3. Since 2013, Barkley has taken roughly sixty course offerings, including courses focusing on responsibility, life skills, and anger management. Dkt. 44-1 at 2-3. And Barkley completed a nonresidential drug program in 2018. *Id.* at 3; Dkt. 53 at 3. Barkley's coursework and his effort to address what he calls his "lifelong drug addiction" are commendable. Dkt. 53 at 3. As of August 30, 2023, Barkley had no disciplinary violations for the preceding six-month period, and the BOP assessed Barkley as having a low risk of recidivism. *Id.*

Case No. 04-cr-119

at 4.[6] But BOP records also show that Barkley needs to complete additional classes focusing on anger and hostility. *Id.* at 4-5.

On consideration of relevant § 3553(a) factors and Barkley's individual circumstances, the Court is not persuaded by the Government's argument that no reduction in sentence is warranted. But the Court also is not persuaded by Barkley's argument that the Court should reduce his total sentence to 309 months. Arguably, a reduced sentence of 309 months would eliminate the disparity between the sentence Barkley received for the second § 924(c) conviction and the mandatory minimum sentence he would face today for the same conduct. But as *Peppers* suggests, postsentencing rehabilitation is highly relevant to this Court's consideration of the factors set forth in § 3553(a) and "sheds light on the likelihood that [Barkley] will engage in future criminal conduct." 562 U.S. at 492. Since 2013, Barkley has made great strides toward rehabilitation, despite occasional setbacks reflected in his disciplinary record. But the record also shows that Barkley has more work to do, including coursework recommended by the BOP to address issues with anger and hostility. Whether the BOP rates his risk of recidivism as low or medium, the Court is not persuaded that reducing Barkley's total sentence to 309 months will protect the public from further crimes committed by Barkley (despite his current age), promote respect for the law, or provide adequate deterrence.

Nonetheless, Barkley's current age and recent rehabilitation efforts persuade this Court that some relief is warranted. Under the circumstances of this case, the Court finds and concludes that reducing Barkley's count four sentence from 300 months to 141 months, resulting in a total reduced sentence of 360 months, will maintain a sentence that is "sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a), will promote respect for the law, will protect the public from further

---

[6] The Government alleges that the BOP describes Barkley's recidivism risk as medium and his security classification as high. Dkt. 51 at 12. Ultimately, the BOP's assessment of Barkley's recidivism risk is one factor among many that the Court considers, so this discrepancy is not dispositive of whether a reduction in sentence is warranted.

Case No. 04-cr-119

crimes committed by Barkley, and will provide Barkley with needed correctional treatment in the most effective manner.

IV.

Considering the unusual length of his sentence, the gross disparity between the mandatory minimum sentence imposed for his second § 924(c) conviction and the mandatory minimum sentence he would face today if convicted of the same conduct, Barkley's relatively advanced age, the BOP's assessment that he has a low risk of recidivism, and his commendable rehabilitation efforts since 2013, the Court finds extraordinary and compelling reasons to grant Barkley's motion for reduction in sentence and to reduce the sentence imposed as to count four from 300 months to 141 months, thereby reducing his total sentence from 519 months to 360 months. The sentences previously imposed as to counts two and three, the previously imposed fines and orders of restitution, the previously imposed terms of supervised release, and all conditions of supervision remain unchanged.

IT IS ORDERED that Barkley's Motion for Reduction of Sentence [Dkt. 44] is granted. Barkley's sentence as to count four is hereby reduced from 300 months to 141 months and his total sentence is hereby reduced from 519 months to 360 months.

IT IS FURTHER ORDERED that Barkley's previously imposed sentences as to counts two and three, the previously imposed fines and orders of restitution, the previously imposed terms of supervised release, and all conditions of supervision remain unchanged.

DATED this 27th day of December 2024.

JOHN D. RUSSELL
*United States District Judge*